*Rivas Aguilar v. Holder*

BIA
Page, IJ
A076 573 220

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15ᵗʰ day of August, two thousand fourteen.

PRESENT:
> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges.*

_____

MARLON ARTILIO RIVAS AGUILAR,
AKA MARLON RIVAS,
> *Petitioner,*

v.                                                            13-319

ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:　　　　JENNIFER RANDOLPH, JENNIFER CHAWLA (Rachel Godsil, Jonathan Romberg, Of Counsel, *on the brief*) Seton Hall University School of Law, Center for Social Justice, Newark, NJ.

FOR RESPONDENT:　　　　EDWARD C. DURANT, ROSANNE Perry (Holly M. Smith, Stuart F. Delery, *on the brief*) Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Marlon Artilio Rivas Aguilar ("Rivas Aguilar"), a native and citizen of El Salvador, seeks review of a December 31, 2012, order of the BIA affirming the September 6, 2012 decision of Immigration Judge ("IJ") Alan L. Page, finding him removable and ineligible for cancellation of removal. *Matter of Marlon Artilio Rivas Aguilar*, No. A076 573 220 (B.I.A. Dec. 31, 2012), *aff'g* No. A076 573 220 (Immig. Ct. N. Y. City, Sept. 6, 2012). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we consider both the IJ's and the BIA's decisions "for the sake of completeness." *Zaman v. Mukasey*, 514 F.3d 233, 237 (2d Cir. 2008). We "review *de novo* the BIA's determination that a particular state crime falls within the definition of moral turpitude." *Mendez v. Mukasey*, 547 F.3d 345, 346-47 (2d Cir. 2008).

The agency found Rivas Aguilar removable based on his convictions for two state crimes that it asserted were "crimes involving moral turpitude" ("CIMT"). The agency also determined that Rivas Aguilar's counsel had conceded removability, and relied on that alleged concession. We hold that the agency erred in considering the issue as conceded, and in failing to utilize the modified categorical approach to determine whether aggravated unlicensed operation of a motor vehicle in the first degree is indeed a CIMT. Accordingly, we conclude that remand is required.

**A. Whether Rivas Aguilar Conceded his Removability**

Rivas Aguilar argues that his conviction for aggravated unlicensed operation of a motor vehicle is not a CIMT. The IJ stated in his decision that Rivas Aguilar's counsel "was not convinced

2

that the conviction for the aggravated unlicensed operation of a motor vehicle . . . was a [CIMT] and espoused this position in writing." He then analyzed the conviction and, after applying "the categorical approach," concluded that it was indeed a CIMT. SA10.

The IJ also noted that Rivas Aguilar's attorney conceded removability. The transcript reveals that the IJ asked if Rivas Aguilar conceded removability, and his attorney answered yes; the IJ then asked if she was sure because she had submitted memorandum contesting that the vehicle-related offense was a CIMT, to which she twice responded that the IJ had concluded that the conviction was a CIMT. SA49-50.

In his notice of appeal to the BIA, Rivas Aguilar argued that his conviction for aggravated unlicensed operation was not a CIMT, although he did not expand upon the argument in his brief. The BIA found that Rivas Aguilar was "bound by his counsel's concession of removability" and had "not pursued this claim in his appeal brief." *Matter of Marlon Artilio Rivas Aguilar*, No. A076 573 220 n.2.

An alien is generally bound by freely retained counsel's concession of removability. *See Hoodho v. Holder*, 558 F.3d 184, 190 (2d Cir. 2009). Here, however, counsel raised the open question of law as to whether aggravated unlicensed operation of a motor vehicle was a CIMT, and the statement considered a "concession" of removability by the IJ was ambiguous as to whether it was conceding removability or conceding only that the IJ disagreed with counsel's position. Further, in circumstances such as these, in which the agency knew that Rivas Aguilar contested whether the relevant conviction was for a CIMT, the agency may have erred in accepting his concession. *See id.* at 190 (regulations require that the IJ be "satisfied that no issues of law or fact remain" in order to accept a concession of removability. *Id.* (quoting 8 C.F.R. § 1240.10(c))). In these particular circumstances, where the "concession" was given only in ambiguous terms and where the IJ knew

3

that the point subject to concession concerned an open question of law, we conclude that the concession of removability does not bar review.

**B. Whether Rivas Aguilar Exhausted his Argument before the BIA**

The government asserts that Rivas Aguilar did not exhaust his claim that his conviction was not for a CIMT. While issue exhaustion is "mandatory," it is not jurisdictional – rather, the government may raise failure to exhaust as an affirmative defense. *Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 119-20, 124 (2d Cir. 2007). Further, a petitioner is not limited to the "exact contours" of his argument to the agency. *Gill v. INS*, 420 F.3d 82, 86 (2d Cir. 2005). Rather, the exhaustion requirement "bars the consideration of bases for relief that were not raised below, and of general issues that were not raised below, but not of specific, subsidiary legal arguments, or arguments by extension, that were not made below." *Id.*

Rivas Aguilar argued before the IJ that aggravated unlicensed operation of a motor vehicle was not a CIMT. The IJ reached, and explained, his own independent conclusion that the conviction was in fact a CIMT. Rivas Aguilar then challenged that conclusion before the BIA, albeit in one sentence in his notice of appeal. Because Rivas Aguilar raised the issue before the BIA, however perfunctorily, the BIA could have addressed the IJ's conclusion on its merits. "[A]t least one of the purposes served by the exhaustion requirement . . . is to ensure that the INS . . . has had a full opportunity to consider a petitioner's claims before they are submitted for review by a federal court." *Theodoropoulos v. INS*, 358 F.3d 162, 171 (2d Cir. 2004); *see United States v. Copeland*, 376 F.3d 61, 67 (2d Cir. 2004) (citing correction of error and the development of a complete record as the purposes of requiring agency exhaustion). In light of the fact that the BIA had an opportunity to consider Rivas Aguilar's claim, and that Rivas Aguilar had argued this point to the IJ—who then

4

discussed his reasons for concluding that the conviction was a CIMT—we conclude that Rivas

Aguilar adequately exhausted the claim. *See Lin Zhong*, 480 F.3d at 124-25.


### C. Whether Aggravated Unlicensed Operation of a Motor Vehicle is a CIMT

In determining whether a conviction constitutes a crime involving moral turpitude, we

employ a "categorical approach," under which "the singular circumstances of an individual

petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to

sustain a conviction under a given statute is relevant." *Gertsenshteyn v. U.S. Dep't of Justice*, 544 F.3d

137, 143 (2d Cir. 2008) (internal quotation marks omitted).

However, if the criminal statute punishes a "diverse class[ ] of criminal acts, some of which

would categorically be grounds for removal and others of which would not," we apply a "modified

categorical approach." *Hoodho*, 558 F.3d at 189 (internal quotation marks omitted). The modified

categorical approach involves a two-step inquiry, in which we first determine whether "some

categories of proscribed conduct render an alien removable and some do not," and second, "consult

the record of conviction to ascertain the category of conduct of which the alien was convicted."

*Lanferman v. BIA*, 576 F.3d 84, 88-89 (2d Cir. 2009) (internal quotation marks omitted); *see also James

v. Mukasey*, 522 F.3d 250, 254 (2d Cir. 2008).

The BIA has defined a crime involving moral turpitude as one that is "inherently base, vile,

or depraved, and contrary to the accepted rules of morality and the duties owed between persons or

to society in general." *Mendez*, 547 F.3d at 347 (citations omitted). We have not addressed either

whether aggravated unlicensed operation of a motor vehicle in violation of New York Vehicle and

Traffic Law ("NYVTL") § 511.3 categorically constitutes a CIMT, or whether the statute is divisible.

However, the statute of conviction has many different subparts, and it does not appear that all of the

punishable conduct would be "inherently base, vile, or depraved" as is necessary for conviction under the statute to categorically constitute a CIMT.

The statute of conviction, NYVTL § 511.3, as it read in 2003, the time of Rivas Aguilar's conviction, stated that a person is guilty of the offense of aggravated unlicensed operation of a motor vehicle when such person commits the offense as it is defined in § 511.2(a)(ii), (iii), or (iv) – which in turn invokes § 511.1(a) defining aggravated unlicensed operation of a motor vehicle as an individual operating a motor vehicle "while knowing or having reason to know" that his license is suspended, with the subsections listing additional aggravating factors with regard to the reason for the suspension – and is "operating a motor vehicle while under the influence of alcohol or a drug," as defined in § 1192.1, 2, 3, 4, or 5. Section 1192, in turn, defined "under the influence of alcohol or drugs" as (1) "driving while ability impaired" by operating a motor vehicle "while impaired by the consumption of alcohol"; (2) "driving while intoxicated; per se," by operating a motor vehicle while per se intoxicated, defined as having a blood alcohol level of at least .10 percent; (3) "driving while intoxicated," by operating a motor vehicle while in an intoxicated condition; (4) "driving while ability impaired by drugs," by operating a motor vehicle while impaired by the use of a drug; or (5) operating a commercial vehicle with a blood alcohol level of at least .04 percent. *See* NYVTL §§ 511, 1192(1)-(5) (2003) (current version at NYVTL §§ 511.3 (2013)).

Because the statute of conviction has so many subdivisions, encompassing a range of conduct, it is likely divisible. *See, e.g.*, *Hoodho*, 558 F.3d at 189-90. If the statute is divisible, the IJ should first determine whether every division within the statute is categorically a CIMT, and if not, then he must use the modified categorical approach to determine under which subdivision Rivas Aguilar was convicted. Here, the IJ did not discuss the different divisions of the statute, nor did he make any attempt to discern under which subpart Rivas Aguilar was convicted.

6

Instead, the IJ concluded that a conviction under the statute was categorically a CIMT. To determine that the statute was categorically a CIMT, as a matter of law, he must have concluded that every subsection necessarily punished conduct that involved moral turpitude.

The IJ acknowledged during the removal hearing that the definition of "operating" was not synonymous with "driving," and could include sitting in a car with the heater on, without moving the car. He stated, however, that conviction under the statute nonetheless required proof of intent to drive the vehicle. Contrary to his conclusion, we have held that "in New York, a defendant can be found guilty of driving while intoxicated even if he or she is asleep at the wheel of a car whose engine is not running and evidence is adduced at trial that the vehicle never moved." *Dalton v. Ashcroft*, 257 F.3d 200, 205-06 (2d Cir. 2001) (citing New York cases to support the conclusion, and holding that "this minimum threshold . . . [does not] satisf[y] the statutory definitions of an 'aggravated felony' or a 'crime of violence'").

The IJ also concluded that the statute was categorically a CIMT because it required that the guilty party *knew* that his license was suspended. Generally, "[c]rimes committed intentionally or knowingly have historically been found to involve moral turpitude," *In re Solon*, 24 I. & N. Dec. 239, 240 (BIA 2007), whereas other crimes, such as assault, may not be, because they "require general intent only and may be committed without the evil intent, depraved or vicious motive, or corrupt mind associated with moral turpitude." *Id.* at 241. However, under the statute at issue here, an individual can be found guilty if he is operating a motor vehicle either while "knowing" or while "having reason to know" that his license is suspended. *See* NYVTL § 511.1(a) (2003).

Because the IJ did not consider whether the statute of conviction was divisible, and erroneously concluded that any conviction under the statute was categorically a CIMT, we remand the case to the agency for a determination as to those issues in the first instance.

7

Rivas Aguilar also challenges the IJ's finding that his petit larceny conviction is a CIMT. This issue was entirely unexhausted before either the IJ or the BIA, and the government raises the failure to exhaust. *See Lin Zhong*, 480 F.3d at 119-20, 124. However, we have recognized that BIA precedent holds that larceny is a CIMT only when the taking is intended to be permanent, *see Wala v. Mukasey*, 511 F.3d 102, 109 (2d Cir. 2008), and have not yet decided whether New York's petit larceny statute criminalizes only permanent takings. Moreover, for Rivas Aguilar to be removable as charged, both of his convictions must constitute CIMTs. For these reasons, the agency may also wish to consider on remand whether Rivas Aquilar's petit larceny conviction constitutes a CIMT.

For the foregoing reasons, the petition for review is GRANTED.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk